IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOAN MARTINEZ, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | **Civil Action No. 1:11-CV-961** |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| BEN M. BRIGHAM, DAVID T. BRIGHAM, HAROLD D. CARTER, STEPHEN C. HURLEY, STEPHEN P. REYNOLDS, HOBART A. SMITH, SCOTT W. TINKER, BRIGHAM EXPLORATION COMPANY, STATOIL ASA, and FARGO ACQUISITION INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, Joan Martinez, by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

1.      Plaintiff brings this class action on behalf of the public stockholders of Brigham Exploration Company ("Brigham Exploration" or the "Company") against Brigham Exploration's Board of Directors (the "Board" or the "Individual Defendants") seeking equitable relief for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and for their breaches of fiduciary duties arising out of their ongoing efforts to sell the Company to Statoil ASA ("Statoil") pursuant to an unfair price, an unfair process, and through a materially misleading recommendation statement.

2.      On October 17, 2011, Brigham Exploration and Statoil announced a definitive agreement under which Statoil, through its wholly owned subsidiary, Fargo Acquisition Inc.

("Merger Sub"), will commence a tender offer to acquire all of the outstanding shares of Brigham Exploration for $36.50 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $4.4 billion. Statoil commenced the tender offer (the "Tender Offer") on October 28, 2011 and it is scheduled to expire on November 30, 2011.

3.      The Board breached its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given Brigham Exploration's recent strong performance as well its future growth prospects, the consideration shareholders are to receive is inadequate and undervalues the Company.

4.      The Individual Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the merger agreement dated October 17, 2011 (the "Merger Agreement"), defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides Statoil with three business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Statoil a termination fee of $136,550,00 in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Brigham Exploration.

5.      In connection with the Proposed Transaction and the Tender Offer, on October 28, 2011, the Company filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the United States Securities and Exchange Commission

("SEC").  The Recommendation Statement fails to provide the Company's shareholders with material information and provides them with materially misleading information, thereby rendering the shareholders unable to make an informed decision regarding whether to tender their shares in support of the Proposed Transaction.  The Individual Defendants violated Sections 14(d)(4) and 14(e) of the Exchange Act, by omitting material facts necessary to render the Recommendation Statement non-misleading.   The Individual Defendants have also breached their fiduciary duty of candor by failing to disclose material information to the Brigham Exploration shareholders necessary for them to determine whether to tender their shares in support of the Tender Offer.

6.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the class she seeks to represent.  Without this information, Plaintiff and the other Brigham Exploration shareholders will be deprived of their entitlement to make an informed decision on whether to tender their shares should these misrepresentations and omissions not be cured prior to the November 30, 2011 expiration of the Tender Offer.

7.     The Individual Defendants breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and Brigham Exploration, Statoil, and Merger Sub have aided and abetted such breaches by Brigham Exploration's officers and directors.  Plaintiff seeks to enjoin the Proposed Transaction unless and/or until the Individual Defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under sections 14(d)(4) and 14(e) of the Exchange Act [15 U.S.C. § 78n] and Delaware common law, where Brigham Exploration is incorporated.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is proper in the Western District of Texas because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein.  Defendant Brigham Exploration is headquartered in Austin, Texas.

**PARTIES**

10.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Brigham Exploration.

11.    Defendant Brigham Exploration is a corporation organized and existing under the laws of the State of Delaware.  It maintains its principal corporate offices at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.  Brigham Exploration is an independent exploration, development and production company that utilizes advanced exploration, drilling and completion technologies to systematically explore for, develop and produce domestic onshore oil and natural gas reserves.  Brigham Exploration may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201

12.    Defendant Ben M. Brigham ("Ben Brigham") has served as the Company's Chief Executive Officer, President and Chairman of the Board since the Company was founded in 1990.  Ben Brigham may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

13.    Defendant David T. Brigham ("David Brigham") has been a director of the Company since May 2002, and as Executive Vice President — Land and Administration since

June 2002. David Brigham served as Senior Vice President — Land and Administration from March 2001 to June 2002, Vice President — Land and Administration from February 1998 to March 2001, Vice President — Land and Legal from 1994 until February 1998 and as Corporate Secretary from February 1998 to September 2002.  Defendants David Brigham and Ben Brigham are brothers.   David Brigham may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

14.     Defendant Harold D. Carter ("Carter") has been a director of the Company since 1992.  Carter may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

15.     Defendant Stephen C. Hurley ("Hurley") has been a director of the Company since 2002.  Hurley may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

16.     Defendant Stephen P. Reynolds ("Reynolds") has been a director of the Company since 1996.  Reynolds may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

17.     Defendant Hobart A. Smith ("Smith") has been a director of the Company since 2002.  Smith may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

18.     Defendant Scott W. Tinker ("Tinker") has been a director of the Company since 2007.  Tinker may be served with process at 6300 Bridge Point Parkway, Building 2, Suite 500, Austin, Texas 78730.

19.     Defendants referenced in ¶¶ 12 through 18 are collectively referred to as Individual Defendants and/or the Board.

20.     Defendant Statoil is a public limited liability company organized under the laws of the Kingdom of Norway. Statoil is an international energy company with operations in 34 countries that engages in the exploration, production, transportation, refining, and marketing of petroleum and petroleum-derived products.

21.     Defendant Fargo Acquisition Inc. is a Delaware corporation wholly owned by Statoil that was created for the purposes of effectuating the Proposed Transaction. Although Fargo Acquisition, Inc. does business in Texas, it is not registered with the Texas Secretary of State and does not maintain a registered agent for service of process in Texas. Therefore, pursuant to Tex. Civ. Prac. & Rem. Code § 17.044, Fargo Acquisition, Inc. may be served with process by serving its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Brigham Exploration common stock and their successors in interest, except Defendants and their affiliates (the "Class").

23.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable. As of October 25, 2011, Brigham Exploration has approximately 117.32 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(d)(4) and 14(e) of the Exchange Act;

(ii)     Have the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)    Have the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iv)    Have the Individual Defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(v)     Have the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(vi)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

(vii)   Has Brigham Exploration, Statoil, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(viii)  Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

24.     Brigham Exploration is an independent exploration, development and production company that utilizes advanced exploration, drilling and completion technologies to systematically explore for, develop and produce domestic onshore crude oil and natural gas reserves.

25.     Historically, Brigham Exploration's exploration and development activities have been focused in the Onshore Gulf Coast, the Anadarko Basin and West Texas and other provinces.  However, in late 2007, Brigham Exploration shifted the majority of their drilling capital expenditures to the Williston Basin, where the Company is currently targeting the

Bakken, Three Forks and Red River regions.   As of June 30, 2011, the Company had approximately 375,800 net leasehold acres in the Williston Basin.

26.     Brigham has demonstrated strong operational capabilities by adapting new technology in horizontal drilling and hydraulic fracture stimulations to develop the tight oil resources in the Williston Basin.  Brigham has drilled 88 consecutive producing North Dakota wells, with an average early 24-hour peak production rate of approximately 2,800 BOE per day. The Company currently operates 12 rigs in the area and aims to drill approximately 140 wells per year.

27.     The Company has recently been knocking it out of the park in terms of production and earnings. Brigham Exploration's average daily production volumes for the first six months of 2011 were 11,760 barrels of crude oil equivalent (Boe) per day, up 79% when compared to the first six months of 2010. The Company's production volumes in the Williston Basin for the first six months of 2011 were 9,890 Boe per day, which represents a 126% increase from that in the first six months of 2010.  The Company's crude oil production volumes for the first six months of 2011 averaged 9,710 barrels per day, which represents a 113% increase from that in the first six months of 2010.

28.     Revenues from the sale of crude oil and natural gas were up 136% to $167.3 million as compared to that in the first six months of 2010. Higher crude oil sales volumes and crude oil prices increased revenues by $64.7 million and $35.0 million, respectively.

29.     The Company's reported net income for the first six months of 2011 was $72.4 million ($0.61 per diluted share) versus net income of $29.8 million ($0.27 per diluted share) for the same period in 2010.

30.    In an August 8, 2011 press release announcing the Company's financial results through the second quarter of 2011, Gene Shepherd, Brigham's Chief Financial Officer, stated: "Continued strong performance of our horizontal Bakken and Three Forks drilling program led to another record quarter for production volumes, revenues and operating income. Furthermore, based on our 2011 production guidance, we expect to see significant growth in our production volumes in the second half of the year."

31.    A September 29, 2011 article on seekingalpha.com titled "Brigham Exploration Company's Bright Future" commented on Brigham Exploration's recent strong performance and its promising outlook stating:

> First off, we can look at the company's finances, a place where Brigham stands out from the crowd. Year over year, immense growth can be seen in the net income section, where Q2 2010 had a net income of $18,473,000, and Q2 2011 had an astounding net income of $ 70,835,000, a YoY increase of 283%. In terms of earnings, the company has posted consecutively higher numbers for years, from an EPS of 0.13 in Q2 2010, to a 0.24 EPS in Q4 2010, to a 0.33 EPS last quarter (Q2 2011). Analysts have estimated a yearly EPS of 1.36 for 2011 and 2.34 for 2012. If these estimates turn out to be true, then the company could be much, much larger and profitable next year than it is today, with an EPS growth of 72% or more. And knowing that Brigham hasn't missed analyst expectations for years, and shows no signs of doing so soon, the 2.34 EPS and 72% EPS growth for 2012 could be an understatement. It all depends on whether or not you think the company can sustain its growth through new projects, production, and methods. These are vital to success, and are topics that Brigham appears to be working and making progress on.
>
> Another major, if not the most important point in considering an oil exploration stock, is to make sure the company has the means and the will to continue to succeed in the future. During the latest conference call (Q2 2011), the company's current success and planned growth was emphasized. The speaker mentioned the key point that Brigham had drilled 79 consecutive North Dakota wells, each with an average IP (Initial Production) of 2,800 boe/d (barrels of oil equivalent per day). This average is quite impressive for the area, making them a key player. The company also has plans to construct almost 1400 to 2200 more wells than they already have, which indicates the company is just getting started with exploration, development, and production. According to numbers released by the company, a 6000 boe/d well could gross 8.7 million dollars, provide a rate of return at around 51%, and have a full return on investment in two years, which is much sooner

than the life of the well, which is estimated at 25 years. If these numbers are true, then it would mean Brigham's larger wells could be looking at almost 23 years of making a solid profit, without any risk of losing money. The company also released a letter on September 23rd stating that they expected Q3 production values to be in the high range of what was expected, between 15,000 and 16,200 boe/d.

### *The Company Enters Into the Unfair Proposed Transaction*

32.     In a press release dated October 17, 2011, the Company announced that it had entered into a merger agreement with Statoil pursuant to which Statoil, through Merger Sub, will commence a tender offer to acquire all of the outstanding shares of the Company for $36.50 per share.  Statoil commenced the Tender Offer on October 28, 2011 and it is scheduled to expire on November 30, 2011.

33.     The Proposed Transaction consideration fails to adequately compensate the Company's shareholders for the promising growth potential of the Bakken shale region. By acquiring Brigham, Statoil will now get a substantial presence in the promising Bakken shale area, an area that is expected to quintuple in oil production. As stated in an article on businessweek.com titled *Statoil Buys Brigham for $4.4 Billion to Get Bakken Shale*:

> By buying Brigham, Statoil joins ConocoPhillips and Exxon Mobil Corp. in the top 10 holders of Bakken shale acreage, according to Bloomberg Industries. The 200,000 square-mile (518,000 square-kilometer) geological formation, centered in North Dakota, *may eventually produce as much as 2 million barrels of oil a day, compared with 400,000 barrels a day last year*, according to local producers.

> "By entering the Bakken and Three Forks we get immediate operatorship," Statoil Chief Executive Officer Helge Lund said in an interview. "It's important for us to position ourselves in the best unconventional areas and all the areas we're in now have very competitive cost levels."

> \* \* \*

> "I like it strategically," Carl Christian Bachke, an analyst at RS Platou Markets AS with a "buy" recommendation, said by phone. "They are now heavily involved in Marcellus, Eagle Ford and Bakken. *That's the place you want to be in the U.S. onshore* and this is the last piece of that puzzle."

Brigham, based in Austin, Texas, has more than 100 employees in Austin and
North Dakota and a "strong position" in the Bakken and Three Forks tight oil
areas in North Dakota and Montana, Statoil said.  [Emphasis Added]

34.     Statoil CEO Helge Lund made it quite clear that the biggest reason for acquiring

Brigham is to acquire the Bakken and Three Forks assets, stating:

> The US unconventional plays hold a substantial resource base and represent an
> increasingly important part of future energy supplies. Statoil has step by step
> developed industrial capabilities through early entrance into Marcellus and Eagle
> Ford. Entering the Bakken and Three Forks tight oil plays and taking on
> operatorship represents a new significant step for Statoil. We are positioning
> ourselves as a leading player in the fast growing US onshore oil and gas industry,
> in line with the strategic direction we have set out.

35.     Numerous analysts have recently valued Brigham Exploration well above the

Proposed Transaction price of $36.50 per share. For example, on September 1, 2011, Raymond

James upgraded Brigham Exploration from Outperform to Strong Buy, and raised their price

target of Brigham Exploration common stock from $32 to $40 per share.  Analysts at Global

Hunter Securities upgraded shares of Brigham Exploration from an "accumulate" rating to a

"buy" rating in a research note to investors on August 10th, 2011. Global Hunter Securities has a

$41.00 price target on Brigham Exploration stock.

36.     Overall, according to Yahoo Finance, the average price target for Brigham

Exploration common stock among 21 analysts was $36.98 per share, with at least one analyst

setting a $45.00 per share price target.

37.     The *Discounted Cash Flow Analysis* conducted by the Company's own financial

advisor, Jefferies & Company, Inc. ("Jefferies"), yielded a value for the Company as high as

$40.10 per share.

38.     Moreover, earlier this year, Brigham Exploration has traded above the Proposed

Transaction price, trading as high as $37.87 per share on March 31, 2011. In addition, while

$36.50 price is a 20% premium to the $30.36 price Brigham Exploration common stock closed at on October 14, 2011, it is still below the 23 percent average premium this year in the oil and gas industry, Bloomberg calculations show.

39.     An article on seekingalpha.com dated October 18, 2011 stated that given Brigham Exploration's "sizable acreage position, potentially over two thousand future drilling locations that will come from higher density drilling, the as of yet untested shallower and deeper zones, [and] the production that is likely to quintuple over the next five years," the $36.50 Proposed Transaction price "seems to leave a lot on the table of the not too distant future."

### The Preclusive Deal Protection Devices

40.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

41.     §6.2(b) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Statoil.  §6.2(a) demands that the Company terminate any and all prior or on-going discussions with other potential acquirors.

42.     Pursuant to §6.2 of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Statoil of the bidder's identity and the terms of the bidder's offer.  Thereafter, should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with Statoil in order to enter into the competing proposal, it must grant Statoil three business days in which the Company must negotiate in good faith with Statoil (if Statoil so desires) and allow Statoil to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid no longer constitutes a

superior proposal.  In other words, the Merger Agreement gives Statoil access to any rival bidder's information and allows Statoil a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Statoil and piggy-back upon the due diligence of the foreclosed second bidder.

43.     The Merger Agreement also provides that a termination fee of $136,550,000 must be paid to Statoil by Brigham Exploration if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

44.     Statoil is also the beneficiary of a "Top-Up" provision that ensures that Statoil gains the shares necessary to effectuate a short-form merger.  If Statoil receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.  In the event Statoil fails to acquire the 90% required, section 2.4(a) of the Merger Agreement contains a "Top-Up" provision that grants Statoil an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger that will allow the Proposed Transaction to be consummated without a shareholder vote.

45.      In connection with the execution of the Merger Agreement, all of the directors and executive officers of the Company entered into a Tender and Voting Agreement with Statoil and Merger Sub pursuant to which they have agreed, among other things, to tender their shares of common stock owned by them into the tender offer and, if required by applicable law, to vote their shares in favor of adopting the Merger Agreement.

46.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal

to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

***Brigham Exploration's Executives Officers and Directors Stand to Receive Unique Material Financial Benefits in the Proposed Transaction Not Available to Brigham Exploration's Public Shareholders***

47.    The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of Brigham Exploration's public shareholders.

48.    The Company's directors and executive officers hold unvested stock options of the Company that, pursuant to the terms of the Proposed Transaction, will accelerate and automatically vest prior to the consummation of the Proposed Transaction, and will entitle the holder to receive the Proposed Transaction consideration of $36.50 per share minus the exercise price of the stock option. The following chart shows the amount and value of the vested and unvested stock options held by the Company's executive officers and directors that they will be able to cash out pursuant to the Merger Agreement with Statoil:

| Name | Vested Options to be Converted to the Option Consideration | | Unvested Options to be Accelerated and Converted to the Option Consideration | | Total Estimated Option Consideration |
| | Number of Shares | Weighted Average Exercise Price Per Share | Number of Shares | Weighted Average Exercise Price Per Share | |
| --- | --- | --- | --- | --- | --- |
| *Directors* | | | | | |
| Ben M. Brigham | 220,000 | $  6.37 | 360,000 | $  8.22 | $ 16,810,300 |
| David T. Brigham | 172,000 | $  6.58 | 294,000 | $  8.72 | $ 13,311,890 |
| Harold D. Carter | 56,000 | $  6.89 | 54,000 | $  9.23 | $  3,130,600 |
| Stephen C. Hurley | 56,000 | $  6.89 | 54,000 | $  9.23 | $  3,130,600 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Stephen P. Reynolds | 46,000 | $ | 6.45 | 54,000 | $ 9.23 | $ 2,854,900 |
| Hobar A. Smith | 56,000 | $ | 6.89 | 54,000 | $ 9.23 | $ 3,130,600 |
| Scott W. Tinker | 26,000 | $ | 4.44 | 60,000 | $ 9.10 | $ 2,477,300 |
| *Executive Officers (other than Ben M. Brigham and David T. Brigham)* | | | | | | |
| Eugene B. Shepherd, Jr. | 262,000 | $ | 6.36 | 318,000 | $ 8.51 | $16,797,000 |
| Jeffery E. Larson | 94,275 | $ | 7.90 | 252,825 | $ 9.17 | $ 9,604,610 |
| A. Lance Langford | 114,000 | $ | 7.51 | 287,000 | $ 8.84 | $11,104,880 |
| All Executive Officers and Directors as a group (10 persons) | 1,102,275 | $ | 6.69 | 1,782,825 | $ 8.74 | $82,352,680 |

49.     The Company's executive officers also hold restricted shares of the Company
that, pursuant to the Merger Agreement, will no longer be subject to restrictions and will be
converted into a right to receive the Proposed Transaction consideration of $36.50 per share. The
following chart shows the amount and value of the restricted stock units held by the Company's
executive that they will be able to cash out pursuant to the Merger Agreement with Statoil:

| Name | Estimated Number of Unvested Restricted Shares | | Consideration Payable in Respect of Unvested Restricted Shares |
|---|---|---|---|
| Ben M. Brigham | 54,714 | $ | 1,997,061 |
| David T. Brigham | 41,571 | $ | 1,517,342 |
| Eugene B. Shepherd, Jr. | 43,571 | $ | 1,590,342 |
| Jeffery E. Larson | 40,714 | $ | 1,486,061 |
| A. Lance Langford | 41,286 | $ | 1,506,939 |

50.     In addition, contemporaneously with the execution of the Merger Agreement, the
Company entered into Employment and Consulting Agreements with each of defendants Ben
Brigham, David Brigham, and Eugene B. Shepherd, Jr. ("Shepherd"), the Company's Executive
Vice President and Chief Financial Officer.

51.     As described in a Form 8-K filed by the Company with the SEC, the terms of Ben
Brigham's Employment and Consulting Agreement is as follows:

Under B. Brigham's Consulting Agreement, from the Acceptance Time until the
earlier of (i) 60 days after the Acceptance Time, (ii) such date that the Company

notifies B. Brigham in writing that his employment is terminated, or (iii) B. Brigham's death (the earlier of (i), (ii) and (iii) being referred to as the "B. Brigham Employment Termination Date"), B. Brigham is entitled to receive (a) base salary at a rate no less than the rate in effect as of immediately prior to the Acceptance Time and (b) a 2011 bonus equivalent to 80% of B. Brigham's base annual salary in effect as of immediately before the Acceptance Time, prorated through the B. Brigham Employment Termination Date if such date occurs before December 31, 2011, which bonus is in lieu of any 2011 annual bonus B. Brigham would otherwise be eligible to receive under his existing Employment Agreement with the Company effective as of May 14, 1997, as amended (his existing "Employment Agreement"). Provided that B. Brigham has not voluntarily terminated his employment before the B. Brigham Employment Termination Date, he will also be entitled to receive a retention bonus of $650,000, less legally required withholdings, in a cash lump sum payable within three business days after the B. Brigham Employment Termination Date. This retention bonus is in addition to amounts B. Brigham may be entitled to receive under his existing Employment Agreement. The description of the severance benefits to which B. Brigham is entitled under his existing Employment Agreement set forth in the Company's proxy statement for its 2011 annual meeting is incorporated herein by reference and filed herewith as Exhibit 99.2.

B. Brigham's existing Employment Agreement will terminate on the B. Brigham Employment Termination Date, except that the Company's obligation to pay severance benefits to B. Brigham, and B. Brigham's confidentiality covenants thereunder, will continue notwithstanding the termination of the agreement.

B. Brigham's Consulting Agreement also provides that for the 90-day period beginning on the B. Brigham Employment Termination Date (which period may be extended at the option of the Company for an additional 90 days), B. Brigham will provide transition and consulting services to the Company. The Company and B. Brigham anticipate that B. Brigham will devote no more than the equivalent of eight hours per week to the provision of consulting services. B. Brigham will be entitled to receive a consulting fee equal to $90,000 payable in three equal monthly installments for his services under the Consulting Agreement, and if the Company elects to extend the Consulting Agreement with B. Brigham, an additional consulting fee equal to $90,000 payable in three equal monthly installments. The Company can terminate the Consulting Agreement with or without cause, and B. Brigham can terminate the Consulting Agreement upon a material breach by the Company….

52.     As described in the same Form 8-K, the terms of David Brigham's and

Shepherd's Employment and Consulting Agreement are as follows:

Under the Consulting Agreements entered into with Mr. Shepherd and D. Brigham (each a "Consultant"), from the Acceptance Time until the earlier of

(i) 60 days after the Acceptance Time, (ii) such date that the Company notifies the Consultant in writing that his employment is terminated, or (iii) the Consultant's death (the earlier of (i), (ii) and (iii) being referred to as the "Consultant Employment Termination Date"), the Consultant is entitled to receive (a) base salary at a rate no less than the rate in effect immediately prior to the Acceptance Time and (b) a 2011 bonus equivalent to 80% of the Consultant's "gross salary" (as that term is defined in the Company's 2011 Performance Bonus Plan) in effect immediately before the Acceptance Time, prorated through the Consultant Employment Termination Date if such date occurs before December 31, 2011 (which bonus is in lieu of the bonus the Consultant would otherwise be eligible to receive under the Company's 2011 Performance Bonus Plan if he remained employed by the Company at the time such bonus is paid). Provided that the Consultant has not voluntarily terminated his employment before the Consultant Employment Termination Date, he will also be entitled to receive a retention bonus in the amount of $650,000 for Mr. Shepherd and $575,000 for D. Brigham, payable in a lump sum cash payment within three business days after the Consultant Employment Termination Date. This retention bonus is in addition to amounts each Consultant may be entitled to receive under his existing Change of Control Agreement with the Company (each, an existing "Change of Control Agreement"), which agreements, except as modified by the Consulting Agreements, continue in full force and effect and will survive the termination of the Consulting Agreements regardless of the reason for such termination.

Each Consulting Agreement also provides that for the 90-day period beginning on the Consultant Employment Termination Date (which period may be extended at the option of the Company for an additional 90 days), the Consultant will provide transition and consulting services to the Company. The Company and the Consultant anticipate that the Consultant will devote no more than the equivalent of eight hours per week to the provision of consulting services. The Consultant will be entitled to receive a consulting fee equal to $90,000 payable in three equal installments for his services under the Consulting Agreement, and if the Company elects to extend the Consulting Agreement with the Consultant, an additional consulting fee equal to $90,000 payable in three equal monthly installments. The Company can terminate the Consulting Agreement with or without cause, and the Consultant can terminate the Consulting Agreement upon a material breach by the Company. Except in the case of a termination by the Company for cause, the Company must pay the Consultant the full amount of any unpaid portion of the applicable consulting fee within 10 days after the date of termination.

In connection with the execution of the Merger Agreement, Brigham Exploration's officers A. Lance Langford ("Langford") and Jeffery E. Larson ("Larson") entered into an employment agreement with Statoil Gulf Services LLC, an indirect wholly owned subsidiary of Statoil ("SGS"), pursuant to which Langford and Larson will serve as SGS's Vice

President, Bakken and Vice President, Operations, respectively. Langford and Larson are entitled to receive lucrative salaries, benefits, and bonus payments pursuant to their employment agreements.

54.     Based on the above, the Proposed Transaction is unfair to Brigham Exploration's public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.

***The Materially Misleading and Incomplete Recommendation Statement***

55.     To make matters worse, Defendants are withholding material information about the Proposed Transaction from Brigham Exploration's public shareholders.     The Recommendation Statement, which recommends that Brigham Exploration's shareholders tender their shares in the tender offer, contains numerous material omissions and misstatements, in violation of Sections 14(d)(4) and 14(e) of the Exchange Act and in contravention of the Board's duty of candor and full disclosure under state law.

### Disclosures Related to Jefferies' Financial Analyses and Opinion Regarding the Value of the Company

56.     The Recommendation Statement fails to disclose certain data and inputs underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Jefferies, including:

(a)     with respect to *Jefferies' Selected Public Company Analysis*:

(i)     for each of the comparable companies selected by Jefferies, the Enterprise Value/Proved Reserves, Enterprise Value/Daily Production, Enterprise Value/2011E EBITDA, and Enterprise Value/2012E EBITDA multiples; and

(ii)     the criteria used to select the multiple reference ranges that were applied to Brigham Exploration's corresponding financial data to calculate implied per share valuation ranges for Brigham Exploration;

(b)     with respect to *Jefferies' Selected Transactions Analysis*:

(i)     for each of the selected transactions, the Transaction Value/LTM EBITDA, Transaction Value/Proved Reserves, and Transaction Value/Daily Production multiples; and

(ii)     the criteria used to select the multiple reference ranges that were applied to Brigham Exploration's corresponding financial data to calculate implied per share valuation ranges for Brigham Exploration;

(c)     with respect to *Jefferies' Discounted Cash Flow Analysis*:

(i)     the criteria used to select the terminal exit multiples ranging from 6.0x to 8.0x; and

(ii)     the key inputs used to calculate the Company' weighted average cost of capital that was used in the analysis;

(d)     with respect to *Jefferies' Premiums Paid Analysis*, the 1 day, 30 day, and 60 day premiums observed for each of the selected transactions; and

(e)     the assumptions used to prepared the Company's projections, and the date the projections were prepared.

**Disclosures Concerning the Events Leading up to the Announcement of the Proposed Transaction**

57.     The Recommendation Statement fails to provide shareholders with material information regarding the events leading up to the announcement of the Proposed Transaction,

including information pertaining to the sales process for the Company. In particular, the Recommendation Statement fails to disclose the following:

(a)    the financial advisory and financing services Jefferies has provided to Brigham Exploration and Statoil in the past two years, and the amount of compensation receive by Jefferies for such services;

(b)    the reasons the Board determined in December 2010 to approach parties in order to gauge their interest in acquiring the Company;

(c)    the criteria used by Jefferies to select the 16 companies that were included in the two lists it presented to the Board on December 10, 2010, and the reasons provided by Jefferies for including companies in either the first tier or the second tier;

(d)    the reasons Jefferies believed that the best approach to maximize value would be "for it to contact the suggested first tier companies in order to qualify their level of interest and to explain that it would take a significant premium to the Company's share price to get a transaction done with the Company";

(e)    the criteria used by Jefferies to determine the companies it considered "viable prospective purchasers";

(f)    the criteria used to select the additional company Jefferies contacted in January 2011;

(g)    the reasons the Board did not instruct Jefferies to contact any private equity parties;

(h)    the reasons all 16 parties on the initial lists prepared by Jefferies were not contacted (it appears in the Recommendation Statement that only 10 or 11 of those companies were contacted);

(i)    the criteria used to select the $40 per share counteroffer offered by the Company on October 4, 2011;

(j)    a summary of the "future potential" of the Company that was presented to the Board by management on October 10, 2011;

(k)    the criteria used by the Board in selecting the $38 or more share price that it authorized Ben Brigham to accept an offer at as indicated on page 16 of the Recommendation Statement;

(l)    when Statoil first indicated their intent to enter into employment and/or consulting agreement with each of the Company's executive officers;

(m)    the reasons the Company did not pursue the joint venture arranagement proposed to the Company that was considered by the Board on March 23, 2011; and

(n)    how many potential acquirers were contacted during the 2008 process, as well as the value of any indications of interest that were received during that process.

58.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(d)(4) and 14(e) of the Exchange Act
### (Against Individual Defendants)

59.    Plaintiff repeats all previous allegations as if set forth in full herein.

60.    Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support of the Proposed Transaction.

61.    Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of
> a material fact or omit to state any material fact necessary in order
> to make the statements made, in the light of the circumstances
> under which they are made, not misleading, or to engage in any
> fraudulent, deceptive, or manipulative acts or practices, in
> connection with any tender offer or request or invitation for
> tenders, or any solicitation of security holders in opposition to or in
> favor of any such offer, request, or invitation. The Commission
> shall, for the purposes of this subsection, by rules and regulations
> define, and prescribe means reasonably designed to prevent, such
> acts and practices as are fraudulent, deceptive, or manipulative

62.    The Recommendation Statement violates the Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision on whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Breach of Fiduciary Duties
### (Against All Individual Defendants)

64.    Plaintiff repeats all previous allegations as if set forth in full herein.

65.    The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of Brigham Exploration and have acted to put their personal interests ahead of the interests of Brigham Exploration shareholders.

66.    The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities

to maximize Brigham Exploration's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

67.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of Brigham Exploration because, among other reasons:

(a)     they failed to take steps to maximize the value of Brigham Exploration to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Brigham Exploration; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

68.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Brigham Exploration's assets and will be prevented from benefiting from a value-maximizing transaction.

69.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

70.     Plaintiff and the Class have no adequate remedy at law.

### COUNT III
### Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Brigham Exploration's shareholders.

73.     As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

74.     As a result, Plaintiff and the Class members are being harmed irreparably.

75.     Plaintiff and the Class have no adequate remedy at law.

## COUNT IV
### Aiding and Abetting
### (Against Brigham Exploration, Statoil, and Merger Sub)

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     As alleged in more detail above, Defendants Brigham Exploration, Statoil, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

78.     As a result, Plaintiff and the Class members are being harmed.

79.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

(B)     declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Section 14(d)(4) and 14(e) of the Exchange Act;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
daniel@emmonsjackson.com

Attorney-in-charge for plaintiff Joan Martinez

OF COUNSEL:

LEVI & KORSINSKY, LLP
Eric M. Andersen, Esq.
Joseph Levi, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JOAN MARTINEZ ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Acquisitions: | Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| | 2/2/11 | 50 | 30.68 |
| | | | |

| Sales: | Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|---|
| | | | |
| | | | |

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

**EXHIBIT**

1

tabbies

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of November, 2011.

_____
Joan Martinez